IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

Jane Doe,

*Plaintiff,*

*v.*

Daniel Cox, Superintendent,
   Western Virginia Regional Jail
   ("WVRJ");
Parker Beard, Classification Officer,
   WVRJ;
Rachel Robertson, Classification Sergeant,
   WVRJ;
Johnathan Robertson, Intake Lieutenant,
   WVRJ;
Adam Looney, Intake Sergeant, WVRJ;
Morgan Puruczky, Intake Officer, WVRJ;
Gordon Rutledge, Classification Officer,
   WVRJ;
Four unidentified Correctional Officers,
   WVRJ;
Megan _____ , Nurse, contracted
   with Wellpath LLC at WVRJ;
Bruce St. Amour, M.D., contracted with
   Wellpath LLC at WVRJ;
   *in their individual capacities.*

**CIVIL
NO.** ___7:26 CV 0004___

**COMPLAINT**

**JURY TRIAL**

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

Now appears Plaintiff Jane Doe, *pro se*, seeking relief from damages resulting from Defendants' wrongful acts. Plaintiff sues all Defendants in their individual capacities, and states as follows in support thereof:

# I. PARTIES

## A. Plaintiff

Jane Doe
c/o P. Wolboldt
344 Maple Ave. W. #217
Vienna, VA 22180
(517) 396-1849
doe.research@outlook.com

## B. Defendants

1.  Daniel Cox, Superintendent, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

2.  Parker Beard, Classification Officer, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in her individual capacity.

3.  Rachel Robertson, Classification Sergeant (Retired), Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in her individual capacity.

4.  Johnathan Robertson, Intake Lieutenant, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

5.  Adam Looney, Intake Sergeant, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

6.  Morgan Puruczky, Intake Officer, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

7.  Gordon Rutledge, Classification Officer, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

8.    Four unidentified Correctional Officers, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in their individual capacities.

9.    Megan _____, Nurse, contracted with Wellpath LLC, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in her individual capacity.

10.    Bruce St. Amour, M.D., contracted with Wellpath LLC, Western Virginia Regional Jail, 5885 West River Road, Salem, VA 24153, 540-378-3700; in his individual capacity.

## II. JURISDICTION AND VENUE

1.    This action is brought against defendants pursuant to 42 U.S.C. § 1983 for committing acts or omissions under the color of law and depriving plaintiff of rights secured by the United States Constitution and the Constitution of Virginia.

2.    This Court has jurisdiction under 28 U.S.C. § 1331, § 1343(a)(3) and § 1367(a).

3.    Venue is proper under 28 U.S.C. § 1391: the acts and omissions which led to this action occurred within this District and within two years of the filing of this Complaint.

4.    This case presents a federal question, an actual case in controversy arising under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the United States Constitution.

5.    This case simultaneously presents a case in controversy arising under the common law of Virginia, and Virginia's Constitution, Art. I, Secs. 8, 9, 10, and 11.

## III. Complaint

1.      This is a civil action seeking damages against Defendants for committing acts or omissions under color of law, which deprived Plaintiff of rights secured by the Constitution of the United States or the Constitution of Virginia; and for refusing or neglecting to prevent such deprivations.

2.      At all times material to this Complaint, Defendants acted under color of their local government positions, and under the color of the statutes, customs, ordinances, and usages of the Commonwealth of Virginia, Franklin County, Montgomery County, Roanoke County, the City of Salem, and Western Virginia Regional Jail.

3.      The individual Defendants are sued in their individual capacities, but to the extent that any Defendant was acting under the color and authority of local government, they are also sued in their official capacities.

4.      Defendants used excessive force against Plaintiff, violated Plaintiff's constitutional rights, and committed other wrongful acts against Plaintiff at the Western Virginia Regional Jail in Salem, Virginia from January 5, 2024 through January 22, 2024.

5.      Plaintiff Jane Doe was arrested on January 3, 2024, detained until January 5, 2024 in the Roanoke County Jail, and then transferred to detention in the WVRJ.

6.      Plaintiff was a pretrial detainee at WVRJ from January 5, 2024 through

January 18, 2024.

7.    Plaintiff was convicted in her name, Jane Doe, of obstruction of justice (without force) and speeding under Virginia law in the General District Court for Roanoke County on January 18, 2024, and returned to the jail.

8.    On January 18, 2024, Plaintiff's counsel entered an appeal to the Circuit Court for Roanoke County; bond was set for $1000 for release pending a *de novo* trial in the Circuit Court.

9.    On January 20, 2024, bond was paid and a release order issued, but Plaintiff was not released from WVRJ.

10.    On January 22, Plaintiff was released from WVRJ on bond.

11.    At all times following her arrest, during her detention, and following her conviction, Plaintiff asserted and exercised, in all situations and before all Defendants, her right to remain silent under the Fifth Amendment of the U.S. Constitution and Article I, Sec. 8 of the Virginia Constitution: "No person … shall be compelled in any criminal case to be a witness against himself," and "He [an accused] shall not be … compelled in any criminal proceeding to give evidence against himself."

12.    At all times following her arrest, during her detention, and upon her release, Plaintiff Doe asserted and exercised, in all situations and before all Defendants, her right to retain the security of her person and body in the absence of a lawful

warrant issued upon probable cause, as guaranteed by the Fourth Amendment of the United States Constitution and Art I, Sec. 8; Art. I, Sec. 10; and Art. I, Sec. 11 of the Constitution of Virginia.

13.    At all times following her arrest and during her detention, Defendants' actions against Doe infringed Doe's rights, at one time or another under the Fourth, Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution.

14.    Plaintiff's name is Jane Doe.  She was arrested, detained, tried, convicted, incarcerated, and released on bond as Jane Doe.  She is the real party in interest, and all Defendants only know her by this name, and no other.

15.    Plaintiff Doe's mark is her signature, as subscribed under this Complaint.

16.     The allegations in this complaint are based on personal knowledge or information and belief of Plaintiff.

17.    All Defendants named herein were, at the times relevant to this Complaint, in the employ of, or contracted to, the Western Virginia Regional Jail.

18.    The Western Virginia Regional Jail is part of the local governments of Franklin County, Montgomery County, Roanoke County, and the City of Salem.

19.    All Defendants have a duty to respect and preserve the human dignity and constitutional rights of each detainee or prisoner, including such dignity and rights as pertain to Plaintiff's body, life and property.

20.    All individual Defendants have both a duty to conduct themselves in a lawful manner and without using excessive force, and a duty to intervene when other officers or contracted personnel use excessive force or violate the human dignity or constitutional rights of detainees or prisoners.

21.    Paragraphs 1-20, and this paragraph, apply to and are fully included in the allegations of each and every Count hereunder, and each allegation within this Complaint is intended to apply to and is fully included in every Count hereunder.

## COUNT 1

**Against Defendants Beard, Puruczky and J. Robertson.**

22.    On 1/5/2024, Jane Doe arrived at WVRJ with prescription eyeglasses which she needs to be able to see.

23.    On 1/5/2024, Defendants Parker Beard and Morgan Puruczky forcibly stripped Jane Doe of her clothes to put her into a suicide smock. As they did so, Beard ripped Doe's glasses from her hand, and forcefully tore Doe's panties off her body, destroying them completely.  Beard took both items away, and they were never returned.

24.    Doe continually requested that her glasses be returned to her so that she could see, but throughout Doe's detention and imprisonment, the glasses were never returned by any officer, and officers instead played mind games with Doe,

sometimes telling her she had no glasses when she arrived, sometimes telling her that they had extensively searched and could not find any glasses.

25.    On 1/10/2024, Defendant Johnathan Robertson brought a pair of reading glasses to Doe, and told her they were the glasses that she had had when she arrived. They were not.

26.    On 1/18/2024, Beard admitted to Doe that she knew Doe had glasses when she arrived at WVRJ on 1/5/2024. Doe asked Beard where her glasses were, and Beard pretended astonishment that Doe didn't have them, claiming she had put Doe's name on Doe's glasses when she took them (without saying where she stored them), and then asking "so you've been without them all this time?" Beard said that she would look for them, but she never returned them or spoke again about the matter.

27.    On 1/22/2024, Doe was shown a jail record containing a handwritten statement to the effect that "per Puruczky, [Doe] did not have any glasses with her when she arrived," an official lie by Puruczky to cover the fact that Beard stole, and then lost or destroyed, glasses Doe needed to be able to see.

28.    Doe was forced to acquire new prescription glasses and new panties to replace those destroyed by the jail employees. The costs for those items are approximately $730.00, and it took Doe at least eight hours to replace these items.

29.    Doe was unable to see clearly and thus participate meaningfully in court hearings, including her trial, and unable to see faces or badges clearly so as to reliably identify the officers who caused her acute emotional distress, mental anguish, and physical harm.

30.    Doe's inability to see clearly caused disorientation and emotional distress during the period she was held at WVRJ.

31.    Defendant Beard stole Doe's property, deprived Doe of her property without due process, and failed the ordinary standard of care for persons in her custody by depriving Doe of a medical device she needed in order to see clearly.

32.    Defendant Puruczky was an accessory to Beard's theft, and conspired with her to cover up the theft and deprivation of a medical device.

33.    Defendant J. Robertson knew, or should have known, that the glasses were destroyed or lost by Beard, but failed to intervene or report the theft, and instead attempted to gaslight Doe into believing that a pair of ordinary reading glasses were her prescription glasses.

34.    Defendants Beard, Puruczky, and Robertson, whether negligently, intentionally, with malice or improper motive, or with gross negligence or deliberate indifference and callous disregard of Plaintiff's rights, denied Plaintiff her right not to be deprived of her property without due process of law, in violation of the Fifth and Fourteenth Amendments of the United States Constitution, and

Art. 1, Sec. 11 of the Virginia Constitution.  They are further liable, at minimum, for the torts of theft and accessory to theft.

35.    Wherefore, Plaintiff requests judgment for Count 1 against Defendant Parker Beard individually, for compensatory damages in an amount of $900 for the theft of the glasses and panties.  Plaintiff further requests judgment against *each* of afore-mentioned Defendants, individually, or jointly and severally, for compensatory damages for the pain and suffering caused by the loss of the glasses in the amount of $17,000, and punitive damages in excess of §75,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## COUNT 2

**Against Defendants Parker Beard, Morgan Puruczky, Johnathan Robertson, and one unidentified male Correctional Officer.**

36.    On 1/5/2024, Defendants Beard and Puruczky forcibly stripped Jane Doe of her clothes to put her into a suicide smock in an intake cell with the door wide open, and with Defendant J. Robertson and an unidentified, red-haired male officer standing in the doorway and viewing Doe's nudity.

37.    Doe said to Beard and Puruczky, "What are you doing, you're letting these men watch!"  Either Beard or Puruczky told her: "So what, you're nothing that they want.  And you stink!"

38.    Defendants J. Robertson and the unidentified male officer did not stop viewing Doe's nudity.

39.    Doe was not combative nor resisting Defendants Puruczky and Beard, and no safety reason existed for male officers or anyone else in the hallway to view Doe's nudity.

40.    Doe's privacy was invaded and she was humiliated by the involuntary exposure of her nudity to male officers.

41.    Defendants Beard, Puruczky,  J. Robertson, and the unidentified male, whether negligently, intentionally, with malice or improper motive, or with gross negligence or deliberate indifference and callous disregard of Plaintiff's rights, harassed and humiliated Plaintiff, and denied Plaintiff her privacy rights in violation of the Fourth and Fourteenth Amendments of the United States Constitution.

42.    Wherefore, Plaintiff requests judgment for Count 2 against *each* of afore-mentioned Defendants, individually, or jointly and severally, for compensatory damages for the humiliation and loss of privacy caused by the involuntary exposure of her nude body in the amount of $10,000, and punitive damages in excess of §20,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## COUNT 3

**Against Defendants Rachel Robertson, Johnathan Robertson, Adam Looney, Morgan Puruczky, and three unidentified male Correctional Officers.**

43.   On 1/16/2024, in the AM, Doe's blood pressure registered 129/80, the one and only time it measured this low during her entire detention, with a heart rate of 132 bpm.

44.   On or before 10:30 AM, about six officers entered Plaintiff's cell, including Rachel Robertson, Adam Looney, and Morgan Puruczky.  An officer recorded the event, and Johnathan Robertson observed.

45.   Puruczky, Looney, and at least two other officers surrounded Doe, handcuffed and chained her and dragged her to the fingerprint scanner.

46.   In order to scan Doe's fingerprints against her will, officers bent Doe's hands back toward her elbow in an abusive "pain compliance" type grip so that her wrists were deeply sprained, and the bones of her hands leading to her fourth and fifth fingers were injured. Her wrists were painfully and deeply lacerated from the handcuffs, swollen and sprained. Johnathan Roberts took photos of the lacerations.

47.   The officers vaguely told Doe that they were going to fingerprint her for an "investigation," but had no warrant or probable cause authorizing the seizure of Doe for the purpose of fingerprinting.

48.   For about ten minutes, the officers subjected Doe to immense, crippling pain, and continuously bent Doe's hands and wrists abnormally, against range of

motion, while holding her legs and bending her torso over the fingerprint scanner. Doe was continuously screaming aloud from the pain, and suffered acute, overwhelming emotional distress.

49.    Ten to fifteen minutes after the officers returned Doe to her cell, Doe's blood pressure measured 184/113 (stroke region).

50.    Doe suffered damage to her hands, wrists, shoulders and neck. She suffered from extreme numbness, tingling and weakness in her hands. She was barely able to hold an eating utensil. She could not use her hands to write until the next day.

51.    Doe's wrists were so sprained and injured by the officers during the "fingerprinting" event that she could no longer push her torso up using her hands from the bed or the floor, an otherwise ordinary everyday movement. She could no longer hold and lift anything heavier than one to two pounds, and that for only a very brief time.

52.    Six months after this incident, Doe could still not put full force on her wrists to push herself up from a chair or floor, nor lift any heavy object she was able to lift before the damage inflicted. It took over a year for the damage to be healed.

53.    Doe suffered acute emotional distress from the excessive force used by the officers to take her fingerprints, and experienced physical pain, weakness and suffering from this event for over a year thereafter.

54.    Defendant officers conspired and acted together to violate Plaintiff's Fourth and Fourteenth Amendment right to be secure in her person against unreasonable searches and seizures, as well as her right not be compelled to give evidence against herself under Art. I, Sec. 8 of the Virginia Constitution, and moreover committed the torts of false imprisonment, assault and battery, and intentional infliction of emotional distress.

55.    Wherefore, Plaintiff requests judgment for Count 3 against Defendants individually, or jointly and severally, for compensatory damages in an amount exceeding $100,000, and further requests judgment against *each* of said Defendants for punitive damages in an amount exceeding §300,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## COUNT 4

**Against Defendant Gordon Rutledge.**

56.    On 1/20/2024, at approximately 2:00-3:00 PM, Magistrate Judge Weaver issued an order to release Doe from WRVJ, because the appeal bond had been posted by Doe's surety.

57.    Defendant Gordon Rutledge had full knowledge of the order, and refused to release Doe and upon information and belief, convinced other unknown officers not to release Doe, in violation of the Magistrate's order.

58.    Because Defendant Rutledge would not release Doe according to the order, the surety rescinded payment of the bond, and Doe was required to undergo another bail hearing so that the bail bond could be reinstated.

59.    On 1/22/2024, the bond was reposted, and Doe was finally released late in the evening.

60.    Defendant Rutledge, and other officers unknown, caused Doe to be falsely imprisoned for over two days and violated her Fifth and Fourteenth Amendment right not to be deprived of liberty without due process, as well as Art. I, Sec. 8 of the Virginia Constitution.

61.    Wherefore, Plaintiff Jane Doe requests judgment for Count 3 against Defendant Rutledge for compensatory damages in an amount exceeding $300,000, and further requests judgment for punitive damages in an amount exceeding §400,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## COUNT 5

**Against Defendants Megan _____ and Dr. St. Amour.**

62.    At intake on 1/5/2024, Doe informed WVRJ officers that she was allergic to all gluten containing food, and that she also could not eat food containing corn.

63.    Doe has had celiac disease for decades, and eating gluten or corn causes an extremely destructive allergic reaction in her intestines which destroys the ability

to absorb nutrients and can eventually cause death. Persons with celiac disease are chronically deficient in vitamin A as well.

64.    All officers to whom Doe relayed her dietary restrictions told her that unless she told them her "name," they would not feed her an appropriately gluten and corn-free diet. All meals served to Doe clearly contained gluten or corn, and Doe was only able to ingest 500-600 calories per day or less of the food served, a starvation diet.

65.    No medical intake examination was made of Doe upon her arrival at WVRJ, and Defendant Nurse Megan _____ refused to do such intake until 1/12/2024.

66.    On 1/12/2024, when Doe informed Nurse Megan _____ of her medical need for a gluten- and corn-free diet, Nurse Megan refused to order such for Doe.

67.    Nurse Megan told Doe that she would not order the correct diet unless Doe "identified" herself, produced medical records which confirmed Doe's food allergies, or let her take Doe's blood to test food allergies.

68.    On 1/17/2024, Defendant Dr. St. Amour visited Doe in her cell for the first and only time. Doe explained to him that she could eat almost nothing of the food served to her, and that she was not getting enough calories to live. Further, she told him that her liver was failing to produce bile, as evidenced by her stool, because there was negligible fat in the food she was able to ingest.

69.    Dr. St. Amour admitted that the diet served at the jail was a "zero out of ten." He told Doe that he would not order a medically appropriate gluten- and corn-free diet for her unless she submitted to the invasive taking of her blood for food allergy testing.

70.    Both Nurse Megan and Dr. St. Amour knew, or should have known, that food allergy testing for gluten or corn using blood is medically useless unless a person has been and is currently ingesting gluten or corn, and Doe had not been ingesting such foods for years.

71.    Losing weight continually due to the intentional starvation, Doe experienced weakness and dizziness throughout her detention, bleeding gums, and liver/gall bladder dysfunction (clay stools).  The lack of vitamin A in the diet caused Doe to experience painful and swollen eyes.  She developed athlete's foot fungus which cracked open and was bleeding.  She lost about 8–10 pounds in two weeks. The Defendant Wellpath contractors refused to give her any medical treatment, including the medically necessary diet for her conditions.

72.    The deprivations, physical insults, and psychological pressure and assaults upon Doe caused extreme anxiety and PTSD, evidenced in part by high blood pressure.  On 1/12/2024, BP was measured at 169/103.  Her BP was measured every day thereafter, and remained high.

73.    Defendant Wellpath contractors, both Nurse Megan and Dr. St. Amour, violated Plaintiff's Eighth and Fourteenth Amendment right to be free from cruel and unusual punishment, as well as that right as articulated in Art. I, Sec. 9 of the Virginia Constitution, and moreover committed the torts of assault and battery and intentional infliction of emotional distress.

74.    Wherefore, Plaintiff requests judgment for Count 5 against Defendants Megan and St. Amour individually, or jointly and severally, for compensatory damages in an amount exceeding $30,000, and further requests judgment against *each* of said Defendants for punitive damages in an amount exceeding §60,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## COUNT 6

**Against Defendant Daniel Cox.**

75.    Defendant Daniel Cox is the superintendent of WVRJ, and the official responsible for management and oversight of WVRJ, the training and supervision of WVRJ employees. Cox has authority to hire, fire and discipline those employees.

76.    Defendant Daniel Cox knew, or should have known, that WVRJ officers sometimes used excessive force against, and invaded the privacy of, detainees without penal justification and in violation of the Fourth Amendment, that WVRJ

officers were likely to steal and destroy property of detainees, and that they were at risk of refusing to obey magistrate judges' orders of release.

77.     Despite his knowledge, Defendant Cox failed to train, supervise, discipline and manage his employees to prevent these constitutional violations and common law torts.

78.     Defendant Cox has a constitutional duty and obligation to protect individuals' life, liberty and property from his subordinates who engage in wrongdoing under the constitution, and he failed that duty.

79.     Defendant Cox' failures to train, supervise and discipline his employees with respect to the protection of constitutional rights of individuals has created a *de facto* policy within WVRJ that indifference to or intentional violation of constitutional guarantees will be at least tolerated.

80.     Defendant Cox' failures to train, supervise and discipline his employees in the protection of constitutional rights of individuals was a moving force behind the constitutional deprivations, assault, battery, and false imprisonment of Doe.

81.     As a result of the *de facto* policy and failures to train, supervise and discipline his employees, Defendant Cox, whether intentionally, with malice, or with improper motive, or with gross negligence, or deliberate indifference and callous disregard of Plaintiff's rights, deprived Plaintiff of her liberty and property rights without due process of law in violation of the Fourth, Fifth, Eighth, and

Fourteenth Amendments of the United States Constitution, as well as Art. I, Secs. 8–11 of the Virginia Constitution.

82.     Wherefore, Plaintiff requests judgment for Count 6 against Defendant Cox, for compensatory damages in an amount exceeding $100,000, and further demands judgment for punitive damages in the amount of §300,000, plus the costs of this action and such other relief as the Court or the jury finds just and equitable.

## IV. JURY TRIAL

Plaintiff requests a jury trial.

## V. CERTIFICATION

I certify to the best of my knowledge, information, and belief, formed after a reasonable inquiry under the circumstances — which include having no access to a majority of relevant and material documents and recordings within the possession of Defendants and not readily available to the public — that:

(a) this ▓▓▓▓▓▓▓▓▓▓ Complaint is not being presented for any improper or frivolous purpose;

(b) to the best of my ability, I believe that the claims and other legal contentions contained herein are either warranted by existing law, or are being brought for the purpose of extending, modifying, or reversing existing law or for establishing new law;

(c) the factual contentions in this ████████ Complaint have evidentiary support or will likely have evidentiary support after a reasonable opportunity for further investigation and discovery, including depositions, of the Defendants and other witnesses.

Subscribed this 5th day of January, 2026.

Jane Doe
c/o P. Wolboldt
344 Maple Ave. W. #217
Vienna, VA 22180
(517) 396-1849
doe.research@outlook.com